[See Cases Nos. 7,216 and 9,175.]

MARTIN, The THOMAS. See Case No. 13,-926.

◄MARTIN WHITE, The (MENDELL v.). See Case No. 9,419.

MARTIN, The WILLIAM. See Case No. 17,-698.

## Case No. 9,177.

### The MARTIN WYNCOOP.

[10 Blatchf. 167.] [1]

Circuit Court, S. D. New York. Sept. 23, 1872.

COLLISION — SPECIFIC NEGLIGENCE CHARGED — HELM SHIFTED—NEGLIGENTLY NAVIGATED.

Where a libel, in rem, for a collision, alleged, that the collision occurred because the vessel sued shifted her helm from starboard to port, and it was not clear, on the evidence, that that was the fact, but the libel also alleged that the vessel sued could easily have avoided the collision, but was so negligently and carelessly navigated, that she ran into the other vessel, which was lying disabled, and the evidence sustained such allegation: *held*, that the failure to prove the alleged mode in which the collision occurred was no ground for refusing a decree to the libellants.

[Appeal from the district court of the United States for the Southern district of New York.]

Charles Donohue, for libellants.
Robert D. Benedict, for claimants.

WOODRUFF, Circuit Judge. I concur in the conclusion of the learned district judge, by whom, more than nineteen years ago, this case was decided. The libellants' schooner was suddenly disabled, and, while, with all diligence, her captain and crew were making the necessary repair, by which alone the schooner could be steered, the vessel meantime lying with her head to the wind, and with little or any motion, except with the current, the sloop, the Martin Wyncoop, having a range of the whole breadth of the North river, nearly three miles at the point in question, ran into her, and caused the damage for which recovery herein was sought. I cannot find that the schooner or her crew omitted any practicable and reasonable precaution to prevent the collision, or that they did anything which contributed thereto; and, that the sloop had abundance of time and opportunity to see and avoid the schooner, is most palpable.

It is, however, most urgently insisted, that the decree should be reversed, because the precise mode in which the vessels were brought together, as stated in the libel, is not confirmed by the proofs; that is to say, that it is stated in the libel, that the sloop had her tiller to starboard, and would have cleared, and was, in fact, clearing the schooner, when her tiller was shifted to port, and she was thereby directed and navigated into the schooner. It is claimed, that not only the positive testimony, but the manner in which the blow was given and received, disproves this allegation.

There is, no doubt, some difficulty, upon the proofs, to explain precisely how the two vessels got into the position in which they were at the moment of the blow, that is, starboard bow to starboard bow, for that is the preponderance of the evidence. But, the allegation in the libel relates to the time when the danger was imminent, when those on board the schooner had actually hailed the on-coming sloop, when, as I think, for want of a proper lookout on the sloop, she had got herself in too near proximity to the schooner, and when, whether it is true that she ported her helm, or, in the excitement of the peril, neglected to keep off sufficiently, ought not to be made the test of the right of recovery. The substantial fact stated in the libel, that, at a time when, at such distance from the schooner that she could easily have passed on either side of her, she was so negligently and carelessly navigated that she ran

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

into her, is, I think, fully proved. On that ground the libellants should have a decree, for the amount decreed below, with interest and costs.